## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAUL GEORGE ANTHONY,

     *Plaintiff,*

*v.*                         CASE NO. 13-cv-13792

COMMISSIONER OF           DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**,  that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

II.   **REPORT**

   A.   **Introduction and Procedural History**

   Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

   Plaintiff Paul Anthony was 41 years of age at the time of the alleged disability onset date. (Transcript, Doc. 7-2 at 53.) Plaintiff's work history includes employment as an asbestos removal worker. (*Id.*) Plaintiff filed the instant claims on March 28, 2011, alleging that he became unable to work on March 1, 2011. (Tr. at 47.)  The claims were denied at the initial administrative stages.   (*Id*.)   In denying Plaintiff's claims, the Commissioner considered atrial fibrillation, cardiomyopathy, congestive heart failure and pulmonary hypertension as possible bases for disability. (Tr. at 126.) On March 1, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Kevin W. Fallis, who considered the application for benefits *de novo*. (Tr. at 59-105.)  In a decision dated May 7, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 47-55.)  On May 31, 2012, Plaintiff requested a review of this decision. (Tr. at 38.)

   The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 5, 2013, when the

Appeals Council denied Plaintiff's request for review. (Tr. at 25-30.) On September 5, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we

do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d

830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

5

C.      **Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq*., and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

6

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D.    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2016, and that Plaintiff had not engaged in substantial gainful activity since March 1, 2011, the alleged onset date. (Tr. at 49.) At step two, the ALJ found that Plaintiff's congestive heart failure, colloid cyst of the brain, hypertension, osteoarthritis, headaches, degenerative disc disease of the thoracic spine, degenerative disc disease of the lumbar spine, chronic pain, and substance abuse were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 50.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 53.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 41 years old, which put him in the "younger individual age 18 to 44" category. *See* 20 C.F.R. §§ 404.1563 and 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 50.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 54.)

E.    **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment for shortness of breath and chest pain at the emergency department of Genesys Regional Medical Center on March 18, 2011. (Tr. at 238-250.) Plaintiff was admitted and diagnosed with atrial fibrillation with rapid ventricular

8

response, congestive heart failure with pleural effusion and cocaine addiction. (Tr. at 250.)

A CT scan of Plaintiff's chest indicated an enlarged heart with findings of congestive heart

failure. (Tr. at 238.) A follow-up chest X-ray on March 23, 2011 revealed an enlarged heart

with bilateral pleural effusions and atelectasis. Findings were noted as grossly stable. (Tr.

at 240.) Plaintiff's echocardiagram revealed a severely abnormal ejection fraction of 25-

30%, moderate left atrial and ventricular dilation, moderate right atrial dilation and mild right

ventricular dilation, severely reduced global left ventricular systolic function, mild mitral

regurgitation and mild tricuspid regurgitation. (Tr. at 243.) Plaintiff's discharge summary

noted that he was improving slowly and gradually and was being discharged in stable

condition with a guarded prognosis. (Tr. at 250.)

At a follow-up visit with his cardiologist on March 28, 2011, Plaintiff reported that

his shortness of breath improved with the medications he began taking in the hospital. (Tr.

at 262-263.) He denied experiencing any chest pain, PND, orthopnea, or peripheral edema.

(*Id.*) A follow-up echocardiogram was recommended in three months, as well as an

immediate exercise stress test. (*Id.*) Plaintiff deferred the stress test until he received his new

health insurance. (*Id.*) Plaintiff did not have the recommended stress test, or the follow-up

echocardiogram. (Tr. at 52, 98.)

In July 2011, Plaintiff sought treatment for chronic headaches from his primary care

physician, Uday Kunadi, M.D. (Tr. at 322.) A CT scan of Plaintiff's brain confirmed the

existence of a colloid cyst. (Tr. at 311.) Although no significant changes were noted

between the July 2011 CT scan and the March 2011 CT scan (conducted during Plaintiff's hospital admission for atrial fibrillation and congestive hear failure), the CT report recommended a neurosurgical consultation because the observed lesion could cause chronic intermittent obstructive hydrocephalus, resulting in Plaintiff's headaches. (Tr. at 311-312.) It was also noted that the cyst could cause acute obstructive hydrocephalus, a life-threatening condition. (*Id.*)

In July 2011, Plaintiff was examined by neurosurgeon Vivekanand Palavali, M.D., who reviewed Plaintiff's CT and MRI and determined that Plaintiff had a colloid cyst, but no hydrocephalus. (Tr. at 298-299.) Dr. Palavali opined that Plaintiff's cyst was questionably symptomatic, and that, although surgery was an option, Plaintiff's "significant medical morbidity" required a consultation for possible endoscopic surgery at either University of Michigan Medical Center or Henry Ford Hospital. (*Id.*) The administrative record does not include records of any such consultation.

In October 2011, Plaintiff was also evaluated by neurologist Henry Hagenstein, D.O. for his chronic headaches. (Tr. at 338-340.) Dr. Hagenstein concluded that Plaintiff's headaches were most likely the result of cervical muscle tension, not the colloid cyst, which are typically asymptomatic. (*Id.*) Dr. Hagenstein ordered an EEG, which was normal, and suggested the trial of a muscle relaxants to treat the headaches. (Tr. at 336-340.) Dr. Hagenstein also recommended a psychiatric evaluation for anxiety and depression, but again, the administrative record does not include evidence of any such evaluation. (*Id.*) After

10

reviewing Plaintiff's CT scan and Dr. Palavali's evaluation, Dr. Hagenstein reiterated his impression that Plaintiff's headaches were cervicogenic in origin and not a symptom of the colloid cyst; however, he endorsed the solicitation of a second opinion from The University of Michigan Neurosurgical Department. (Tr. at 335.)

After complaining of pain in both knees, Plaintiff underwent x-rays in November 2011, which were normal.  (Tr. at 328.)

Immediately following Plaintiff's hospitalization for congestive heart failure, James Kure, M.D., a cardiologist who treated Plaintiff during his hospitalization, completed a Medical Examination Report indicating, on the one hand, that Plaintiff was non-ambulatory, in need of unspecified assistance at home, and indefinitely incapable of working at any job, but, on the other hand, that Plaintiff was improving and had no physical limitations.  (Tr. at 254-255.)

Plaintiff's primary care physician, Dr. Kunadi, completed a Medical Source Statement on Plaintiff in March 2012.  (Tr. at 419-422.)  Dr. Kunadi opined that Plaintiff could only occasionally lift or carry less than ten pounds, stand or walk less than two hours during an eight-hour workday with a sit/stand option and only occasional climbing, balancing, kneeling, stooping, crouching or crawling.  (*Id.*)  Dr. Kunadi also noted that Plaintiff was limited to only occasional reaching or fingering. (*Id.*)  He indicated that Plaintiff's ability to concentrate and maintain attention throughout an eight-hour workday was significantly compromised by his pain and/or medication.  (*Id.*)  Dr. Kunadi further opined that Plaintiff

was limited in his tolerance of temperature extremes, noise, dust, fumes, odors, chemicals, gases, machinery and other hazards, such as height. (*Id*.)  Dr. Kunadi indicated that all of Plaintiff's physical limitations arose from coronary artery disease, congestive heart failure, cardiomyopathy, COPD and a Colloid cyst.  (*Id*.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> would be able to perform work at the light level, which is lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently, stand/walk for about six hours, and sit for up to six hours in an eight-hour workday with normal breaks.  This individual could never climb ladders, ropes or scaffolds.  They could occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl.  They would have to avoid all exposure to unprotected heights.  Additionally, the work would be limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

(Tr. at 101.)   The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the jobs of inspector  (7,000 regional jobs), sorter (19,000 regional jobs), and office helper, (28,000 regional jobs). (Tr. at 101-102.)

The VE was then asked to also consider the same hypothetical individual but who was "limited to sedentary work, which is lift up to 10 pounds occasionally, stand/walk for about two hours, and sit for up to six hours in an eight-hour workday with normal breaks." (Tr. at 102.)  The VE responded that such an individual could perform work as a document preparer (13,000 regional jobs), sorter (16,000 regional jobs), and surveillance system monitor (2,800 regional jobs). (Tr. at 102-103.)

12

The VE was additionally asked to consider a hypothetical wherein the individual was unable to repetitively use his dominant upper extremity on a frequent basis. (Tr. at 103.) The VE responded that such a person could still perform the identified jobs. (Tr. at 103-104.)

Finally the VE was asked to consider the same hypothetical individual who would be off task 20 percent of the day in addition to regularly scheduled breaks. (Tr. at 103.) The VE responded that such a limitation would eliminate all competitive employment. (*Id*.) The VE also testified that the need to be absent from work two days per month would be work preclusive. (*Id*.)

## F.    Analysis and Conclusions

Plaintiff argues that the ALJ erred by failing to discuss whether Plaintiff's congestive heart failure met or equaled listing 4.02, and that this error requires remand. (Docs. 9, 13.)

As previously noted, if a claimant does not have current substantial gainful employment and suffers from a qualifying severe impairment, the ALJ must assess whether the claimant satisfies a listed impairment. *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013); 20 C.F.R. §416.920(a)(4)(iii). If a claimant's impairments meet or equal a listed condition, the ALJ must find him disabled. *Id*.

Although an ALJ need not discuss every listing, or any listing that the applicant clearly does not meet, if the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing. *Id*. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must

13

discuss the listing by name and offer more than a perfunctory analysis of the listing. *Blackburn v. Astrue*, 2012 WL 10509 at *9 (N.D. Ill., January 3, 2012)(citing *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004)); *see also*, *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)(ALJ's conclusion that none of these impairments meet the requirements of an impairment listed in Appendix 1 to subpart P is devoid of any analysis that would enable meaningful judicial review); *Barger v. Astrue*, 2009 WL 807587, at *5 (S.D. Ind. March 25, 2009)(when an ALJ is specifically asked to consider a listing by number in either the oral argument portion of the hearing or the hearing brief, the failure to specifically address that listing requires remand).

In the case at bar, Plaintiff specifically requested the ALJ to consider his impairments under listing 4.02. (Tr. at 230-231.) The ALJ ignored Plaintiff's specific request and omitted all discussion of Listing 4.02 from the administrative decision. The Commissioner, citing *Sheeks*, argues that the ALJ's omission should be construed as harmless error because Plaintiff clearly did not meet the requirements of Listing 4.02.

Listing 4.02  Listing 4.02 (chronic heart failure) is met when at least one requirement in both A and B are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App.1, §4.02; 20 C.F.R. Pt. 404, Subpt. P, App.1, §4.00D2. Listing 4.02A requires the medically documented  presence of either systolic failure, with left ventricular end diastolic dimensions greater than 6.0cm or ejection fraction of 30% or less during a period of stability (not during an episode of acute heart failure; or diastolic failure, with left ventricular posterior wall septal thickness totaling

2.5cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure). *Id.* §4.02A. Listing 4.02B requires, *inter alia*, inability to perform on an exercise tolerance test (ETT) a workload equivalent to 5METs or less due to: (a) dyspnea, fatigue, palpitations, or chest discomfort; or (b) three or more premature ventricular contractions (ventricular tachycardia) or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or (c) decrease of 10mm Hg or more is systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise due to left ventricular dysfunction, despite increase in workload; or (d) signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion. *Id.* §4.02B3.

As the Commissioner notes in its motion for summary judgment, Plaintiff has failed to demonstrate either of the requirements of Listing 4.02A because the medical records provided by Plaintiff (demonstrating an ejection fraction less than 30%) were obtained during a period of acute heart failure, not a period of stability. (Doc. 12.)   Plaintiff has not undergone follow-up cardiac testing during a period of stability due to lack of medical insurance. (Tr. at 52, 98. 262-263.) Nevertheless, the Commissioner's argument overlooks the regulatory dictates that "where there is no or insufficient longitudinal evidence, [the Commissioner] may purchase a consultative examination(s) to help...establish the severity and duration of [the claimant's] impairment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §4.00B3b.

15

Similarly, the Commissioner's suggestion that Plaintiff could not possibly meet the requirements of Listing 4.02B because there was no evidence that he could not tolerate a minimal workload on an ETT (which Plaintiff failed to undergo due to lack of insurance) ignores the regulatory practice of purchasing an ETT for a claimant when "there is a question whether [the claimant's] cardiovascular impairment meets or medically equals the severity of one of the listings, or there is no timely test in the evidence...and [the Commissioner] cannot find [the claimant] disabled on some other basis..." *Id.* §4.00C6a.

The absence of medical evaluation and testing that the Commissioner was at least arguably required to procure prior to making a determination regarding Plaintiff's claim does not render Plaintiff's claim that he met Listing 4.02 so clearly deficient as to excuse the ALJ from discussing it.  In other words, Plaintiff's specific request for consideration under Listing 4.02, along with the available, albeit incomplete, medical records, was sufficient to raise a substantial question as to whether he met that Listing.  Accordingly, the ALJ committed reversible error in failing to discuss Listing 4.02.

Additionally, remand is required here because the ALJ determined Plaintiff's impairments were not medically equivalent to any Listing without the assistance of a medical expert opinion.  A determination as to whether an impairment is equivalent to a listing requires medical expert opinion evidence.  *Fensterer v. Comm'r of Soc. Sec.*, 2013 WL 4029049, at *9 (E.D. Mich. 2013); *see also, Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008)(while an ALJ is capable of reviewing records to determine whether a

claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings). Where there is no consulting examiner, or where the consulting examiner offered no opinion on equivalence, the ALJ is required to obtain an updated medical report addressing equivalence. *Fensterer*, 2013 WL 4029049, at *9-10(citing *Freeman v. Astrue*, 2012 WL 34838, at *4 (E.D. Wash. 2012)(neither the ALJ nor this court possess the requisite medical expertise to determine if plaintiff's impairments in combination equal one of the Commissioner's listings)). The record evidence does not include any medical expert opinion on equivalence.

The lack of medical expert opinion evidence is problematic not only for an equivalence determination, but also for the RFC determination. *See Fensterer*, 2013 WL 4029049, at *10. Plaintiff's treating physician, Dr. Kunadi, provided opinions regarding Plaintiff's physical limitations; however, the ALJ justifiably rejected these opinions because they were not supported by or consistent with record evidence, including Dr. Kunadi's own treatment notes, diagnostic testing, and the insignificant treatment received. (Tr. at 53, 318-355.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). Plaintiff's treating cardiologist, Dr. Kure, noted no physical limitations in his medical examination report. (Tr. at 256.) The record contains no consulting or examining physician opinion.

This void gives rise to the impermissible situation of the ALJ interpreting raw medical data without the benefit of an expert medical opinion. *See Fensterer*, 2013 WL 4029049, at

17

*10.  An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result, an ALJ's determination of an RFC without a medical advisor's assessment is not supported by substantial evidence.  *Id* at *11 (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).  Accordingly, this matter must be remanded so that the ALJ can obtain the opinion of a medical advisor on both the issues of equivalence and Plaintiff's residual functional capacity.

### III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate

in detail with the objections, and shall address specifically, and in the same order raised, each

issue contained within the objections.


                                                          s/ Charles E Binder
                                                      _____
                                                      CHARLES E. BINDER
Dated: October 17, 2014                               United States Magistrate Judge

19